IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 20-00046 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TRESTON C. HARDIN (01), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING DEFENDANT TRESTON C. HARDIN'S MOTION TO SUPPRESS OUT-OF-COURT IDENTIFICATIONS OF TRESTON C. HARDIN AND DENYING HIS REQUEST TO PRECLUDE IN-COURT IDENTIFICATION (ECF No. 84)**

The grand jury returned an Indictment charging Defendant Treston C. Hardin and a co-defendant with:

**Count I:** <u>Carjacking</u> in violation of 18 U.S.C. § 2119; and,

**Count II:** <u>Using and Carrying a Firearm During and In Relation to a Crime of Violence</u>, e.g., during and in relation to Carjacking, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

(Indictment, ECF No. 38).

Defendant Treston C. Hardin moves to suppress the out-of-court identification of him by Wiltern Agonoy ("Agonoy"), the alleged victim who claims that Defendant Hardin robbed him of his truck at gunpoint as charged in the Indictment.

Defendant Hardin asserts that unidentified police officers disclosed the name "Treston Hardin" to the victim prior to the photographic lineup. According to Defendant Hardin, the victim

1

allegedly stated to an investigator from the Office of the
Federal Public Defender that the victim searched for the name
"Treston Hardin" on Facebook and saw several photographs on a
Facebook account prior to the lineup where he identified
Defendant Hardin as the perpetrator.

Defendant Hardin seeks to suppress the out-of-court
identification of Defendant Hardin by the victim.  Defendant
Hardin also seeks to preclude Agonoy from identifying Defendant
Hardin as the perpetrator in court during trial.

Defendant Hardin has not presented any evidence to support
his claims.  In order for the victim's out-of-court
identification to be suppressed, Defendant Hardin must establish
that the police engaged in misconduct and that the police
misconduct was unduly suggestive and unnecessary.

First, Defendant Hardin has presented no evidence that
police officers engaged in any misconduct.  Rather, Defendant
speculates that police officers disclosed Treston Hardin's name
to the victim and that the victim searched out Defendant's name
on social media on his own accord.  There is no evidence that the
victim conducted the internet search at the direction of or
guidance from police.

Second, even if police officers did disclose the name
Treston Hardin to the victim, Defendant has failed to demonstrate
that police engaged in a practice that was both unduly suggestive

2

and unnecessary.  Instead, the record demonstrates that numerous pieces of mail belonging to Defendant Hardin were found in the stolen truck after it was recovered.  It was necessary for police officers to inquire with the victim to determine if he knew the person to whom the mail belonged.

There is no basis to find that the out-of-court identification by the alleged victim violated Defendant Hardin's due process rights.  There is no evidence that law enforcement arranged to procure the identification of Defendant Hardin under unnecessary or unduly suggestive circumstances.

Defendant Hardin's Motion to Suppress (ECF No. 84) is **DENIED.**

**<u>INDICTMENT</u>**

Defendant Hardin and one co-defendant are charged in the **Indictment** filed on June 10, 2020 (ECF No. 38) as follows:

**Count I:  Carjacking (18 U.S.C. § 2119)**

> On or about March 14, 2020, within the District of Hawaii, Treston C. Hardin and Anthony K. Mark, the defendants, with the intent to cause death or serious bodily harm, did take a motor vehicle that had been transported, shipped, and received in interstate or foreign commerce, namely a 1992 Nissan truck, from the person or presence of another by force and violence or by intimidation, and did aid and abet the same, in violation of 18 U.S.C. §§ 2, 2119.

**Count II: Firearm Offense (18 U.S.C. § 924(c)(1)(A)(ii))**

> On or about March 14, 2020, within the District of

Hawaii, Treston C. Hardin and Anthony K. Mark, the
defendants, did knowingly use and carry a firearm
during and in relation to a crime of violence for
which they may be prosecuted in a court of the
United States, namely, the carjacking charged in
Count 1 of this Indictment, which firearm was
brandished, and did aid and abet the same, in
violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii).

## **PROCEDURAL HISTORY**

On March 18, 2020, a criminal complaint was filed against
the Defendants Treston Hardin and Anthony Mark.  (ECF No. 1).

On June 10, 2020, a preliminary hearing was held before the
Magistrate Judge.  (ECF No. 37).

Also on June 10, 2020, the grand jury returned the two-count
Indictment. (ECF No. 38).

On June 16, 2020, Defendant Hardin pled not guilty to Counts
1-2 of the Indictment.  (ECF No. 44).

On May 10, 2021, Defendant Hardin filed MOTION TO SUPPRESS
OUT-OF-COURT IDENTIFICATIONS OF TRESTON C. HARDIN AND TO PRECLUDE
IN-COURT IDENTIFICATION.  (ECF No. 70).

On May 19, 2021, the Court held a Status Conference.  (ECF
No. 78).  The Court denied Defendant's May 10, 2021 Motion as the
Exhibits referenced in the Motion were not provided to the Court.
(Id.)  The Court provided Defendant a continuance to file another
Motion to Suppress that addressed the appropriate legal standard
and provided evidence of improper police conduct.  (Id.)

On July 15, 2021, Defendant filed MOTION TO SUPPRESS OUT-OF-

COURT IDENTIFICATIONS OF TRESTON C. HARDIN AND TO PRECLUDE IN-COURT IDENTIFICATION.  (ECF No. 84).

On August 9, 2021, the Government filed GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT TRESTON C. HARDIN'S 2D MOTION TO SUPPRESS OUT-OF-COURT IDENTIFICATIONS OF TRESTON C. HARDIN AND TO PRECLUDE IN-COURT IDENTIFICATION.  (ECF No. 86).

On August 23, 2021, Defendant filed his REPLY.  (ECF No. 91).

**BACKGROUND**

The evidence before the Court is limited to police reports, police records, law enforcement affidavits, and statements by the victim and an eyewitness at the time of the incident.

The evidence is summarized as follows:

**Alleged Carjacking on March 14, 2020**

According to the Affidavit of Special Agent Joseph Villagomez of the Bureau of Alcohol, Tobacco, Firearms and Explosives, on March 14, 2020, at approximately 11:30 a.m., the alleged victim Wiltern Agonoy ("Agonoy") was sitting in the driver's seat of his Nissan truck at the Waipio soccer complex on the island of Oahu.  (Affidavit of ATF Special Agent Joseph Villagomez, attached to the Criminal Complaint, at ¶ 4, Defendant's Ex. A, ECF No. 84-5).

According to Villagomez's Affidavit, a red Mazda hatchback

drove up to Agonoy's truck with one man in the driver's seat and another man in the passenger's seat.  (Id.)  The driver of the Mazda told Agonoy that he was interested in buying his truck. (Id.)  Agonoy responded that it was not for sale.  (Id.)

According to Villagomez's Affidavit, the man in the passenger's seat of the red Mazda opened the passenger side door, got out carrying a shotgun, and sat in the passenger seat of the truck next to Agonoy.  (Id. at ¶ 5).  The man then threatened to shoot Agonoy, pumped the shotgun, and aimed it at Agonoy.  (Id.) Agonoy reported that the shotgun looked real and that he was "terrified."  (Id.)

Agonoy claimed that the driver also got out of the Mazda, approached Agonoy on the driver's side of the Nissan truck and ordered Agonoy to get out of the truck.  (Id. at ¶ 6).  Agonoy stated that he fled on foot while the passenger who wielded the shotgun returned to the Mazda and drove away.  (Id.)  Agonoy asserted that the driver of the Mazda who ordered Agonoy out of the truck, got into Agonoy's truck and drove it away.  (Id.)

**Agonoy Reported the Carjacking Immediately on March 14, 2020**

Agonoy states that he immediately called the Honolulu Police Department and reported the alleged carjacking incident.  A police report was prepared by Honolulu Police Officer Stephen Lau.  (Police Incident Report by Officer Lau, attached as

Defendant's Ex. C, ECF No. 84-7).  Officer Lau wrote that Agonoy
and an eyewitness, Kaylen Reyes, provided a description of the
suspects.  (Id.)  The suspect reported to have carried the
shotgun was described as follows:

    -Local male

    -5'6/160 lbs

    -Long black hair, tied back

    -Black tank top w/shorts

    -Tear drop tattoos on face

    -Pulled shotgun on victim

    (Id. at p. 3).

Agonoy provided a written statement about the incident.
(Agonoy's Statement Form, attached as Defendant's Ex. D, ECF No.
84-8).  Officer Lau explained that Agonoy was coherent but
"visibly distraught like he was crying" during the initial
contact with police and that he broke down during the
investigation.  (Police Incident Report by Officer Lau at p. 2,
attached as Defendant's Ex. C, ECF No. 84-7).

**Stolen Truck Recovered The Following Day on March 15, 2020**

According to police reports, the following evening, on March
15, 2020, at approximately 11:48 p.m., Honolulu Police Officer
Anthony Ozoa observed the stolen Nissan truck unoccupied at
Apuhuhu and Au Streets.  (Police Incident Report by Officer Ozoa

at p. 3, attached as Government's Ex. B, ECF No. 86-2).  Officer Ozoa called Agonoy to inform him that they found the truck. (Id.)

Police reports state that as officers investigated the Nissan truck, they observed a red/maroon Toyota Corolla with dark tinted windows parked nearby that was occupied.  (Id.)  Officer B. Beatty approached the Toyota Corolla but the driver sped away, collided with multiple structures and signs, and crashed into a fence.  (Police Incident Report by Detective M. Wang, attached as Gov't Ex. C, ECF No. 86-3).  Police reports state that the occupant fled on foot.  (Id.)

The police reports indicate that Officer Beatty observed an open bag in the rear passenger seat of the Toyota with a shotgun sticking out of it.  (Id. at p. 4).  Officers conducted a search of the vehicle and seized the shotgun and a wallet containing a bus pass with the name "Treston Hardin" and a photograph. (Officer Humphrie's Report at p. 2, attached as Gov't Ex. A, ECF No. 86-1).

**Search of the Truck on March 16, 2020**

The evidence provides that a few hours later, in the early morning hours of March 16, 2020, Agonoy and a family member arrived at the scene where officers recovered his Nissan truck. (Id.)  Agonoy provided written consent to search the Nissan

truck.  (Written Consent to Search, attached as Defendant's Ex. I, ECF No. 84-13).

Honolulu Detective Ming Wang and Special Investigative Services Technician Bridie Farley searched the truck and seized multiple envelopes and paperwork with the name "Treston Hardin" on them.  (Police Incident Report of Detective Wang, attached as Government's Ex. C, ECF 83-6).  The paperwork included a letter addressed to "Treston Hardin" from the "State of Hawaii, Hawaii Paroling Authority."  (Photographs of mail, letters, and paperwork seized from the Nissan truck bearing the name "Treston Hardin," attached as Government's Ex. D, ECF No. 86-4).

**Blind Sequential Photo Lineup Conducted On March 17, 2020**

Honolulu Police Officer Gerald Agbulos submitted a followup report based on his review of the descriptions of the suspects provided by Agonoy and the eyewitness Reyes.  (Follow-Up Police Incident Report by Officer Agbulos, attached as Government's Ex. E, ECF No. 86-5).  Officer Agbulos wrote in his report that he believed the descriptions resembled Defendants Treston Hardin and Anthony Mark based on his prior contacts with the Defendants. (Id.).

Detective Sue Miller prepared an Affidavit stating that she reviewed Officer Agbulos' report and analyzed mugshots of Hardin and Mark with the descriptions provided by Agonoy and determined

9

there were strong similarities.  (Probable Cause Affidavit of Honolulu Detective Sue Miller at ¶ 8, attached as Defendant's Ex. B, ECF No. 84-6).

Detective Miller's Affidavit states that she prepared Sequential Photographic Lineups for Hardin and Mark.  (Id. at ¶ 9).  According to Detective Miller, Agonoy agreed to meet with police officers at the Kapolei police station to complete the lineups.  Detective Wilson Atud administered the lineups to Agonoy.  (Id.)

The evidence in the record states that Agonoy positively identified both Defendant Hardin and Defendant Mark from the Blind Sequential Photographic Lineups.  (Id. at ¶ 10; photograph of Defendant Hardin, identified by Agonoy, attached as Defendant's Ex. J, ECF No. 84-14; Sequential Photographic Lineup Instructions and Results completed by Agonoy, attached as Defendant's Ex. K, ECF No. 84-15).

Agonoy indicated on the lineup results form that Defendant Hardin was the man who threatened to shoot him with a shotgun if he did not give up his truck.  (Sequential Photographic Lineup Instructions and Results, attached as Defendant's Ex. K, ECF No. 84-15).

After the photographic line-up where Agonoy positively identified Defendants Hardin and Mark, Agonoy was shown photographs of the shotgun recovered from the Toyota Corolla that

crashed near the scene where his Nissan truck was found.
(Photographs of shotgun recovered from Toyota Corolla, attached
as Defendant's Ex. L, ECF No. 84-16).  Agonoy wrote on the
photographs that the shotgun in the photographs was the one that
was used during the purported carjacking of his truck on March
15, 2020.  (Id.)

Agonoy was subsequently shown a photograph of the bus pass
bearing the name "Treston Hardin" that was found in the Toyota
Corolla.  (Id. at p. 3).  Agonoy wrote on the photograph of the
bus pass that "this guy that point the shotgun."  (Id.)

## ANALYSIS

The jury traditionally evaluates the reliability of
evidence, including the reliability of an eyewitness's
identification of a defendant.  Perry v. New Hampshire, 565 U.S.
228, 245 (2012); Manson v. Brathwaite, 432 U.S. 98, 116 (1977).

The Court may suppress the admission of eyewitness
identification testimony if suggestive pretrial identification
procedures were so impermissibly suggestive and unnecessary as to
taint subsequent in-court identification and thereby deny a
defendant due process of law.  United States v. Bagley, 772 F.2d
482, 492 (9th Cir. 1985).

A defendant is not entitled to a hearing on a motion to
suppress an out-of-court identification unless he makes a

sufficient pretrial showing of impropriety regarding the
challenged identification evidence.  <u>United States v. Allison</u>,
414 F.2d 507, 410 (9th Cir. 1969); <u>Lynn v. Bliden</u>, 443 F.3d 238,
248 (2d Cir. 2006) (citing <u>United States v. Wade</u>, 388 U.S. 218
(1967)).

There is a two-step process to review a due process
challenge to an out-of-court identification.

**<u>STEP ONE</u>**, the District Court must analyze whether the police
used an identification procedure that was both unduly suggestive
and unnecessary.  <u>United States v. Vines</u>, 9 F.4th 500, 506 (7th
Cir. 2021).  It is not enough to show the identification
procedure employed may have, in some respects, fallen short of
the ideal.  <u>See</u> <u>Simmons v. United States</u>, 390 U.S. 377, 385-86
(1968).  A defendant must show "police misconduct."  <u>Perry</u>, 565
U.S. at 241.

**<u>STEP TWO</u>**, at step two of the analysis, upon a finding that
there was police misconduct in the identification procedure, the
trial court must examine the totality of the circumstances to
determine whether suppression is warranted.  <u>Manson</u>, 432 U.S. at
110.  The trial court examines:

    (1)  the opportunity of the witness to view the criminal at
         the time of the crime;

    (2)  the witness's degree of attention;

    (3)  the accuracy of the prior description of the criminal;

    (4)  the level of certainty demonstrated at the

confrontation; and,

(5)  the time between the crime and the confrontation.

Id. at 114.  Courts weight these five factors against the effect of the unnecessary and unduly suggestive identification itself to determine whether suppression is warranted.  Id.

**STEP ONE**: **There Is No Evidence Of Police Misconduct As Is Required To Suppress An Out-Of-Court Identification**

In order to suppress an out-of-court eyewitness identification, a defendant must first show "police misconduct." Perry, 565 U.S. at 241.

The Due Process Clause does not require a District Court to examine the reliability of an out-of-court identification unless evidence shows that law enforcement "arranged" to procure the identification under unnecessary and unduly suggestive circumstances.  Id. at 248.  Without such a showing, trial courts need not screen such evidence for reliability before allowing the jury to assess credibility.  Id. at 245.

The United States Supreme Court requires that both unnecessary and improperly suggestive circumstances be arranged by law enforcement officers themselves.  Id. at 232.  The United States Supreme Court recently explained in Perry that:

> When no improper law enforcement activity is involved, ... it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the

13

fallibility of eyewitness identification and the
requirement that guilt be proved beyond a reasonable
doubt.

Id. at 233.

## A.   Law Enforcement Must Have Engaged In Misconduct And Used An Identification Procedure That Was Unduly Suggestive

Police conduct that employs a procedure designed to lead a
witness to identify a particular person as the perpetrator may be
unduly suggestive.  Bagley, 772 F.2d at 492.

The United States Supreme Court has identified some of the
ways in which an identification procedure may be unduly
suggestive.  For example, a police-designed lineup that features
individuals "grossly dissimilar in appearance to the suspect" is
improperly suggestive.  Perry, 565 U.S. at 243.

There are no such allegations in this case.  Defendant has
not raised any claims that the Blind Sequential Lineup was
conducted improperly, or that it was designed for Defendant
Hardin's photograph to stand out in a way that amounts to
misconduct by the police.

Certain police comments to a witness before and during an
identification procedure may also amount to "improper
suggestion," such as when the police tell the witness "that they
have caught the culprit after which the defendant is brought
before the witness alone or is viewed in jail," or when the
police point out the suspect before or during a lineup.  See

14

Walden v. Shinn, 990 F.3d 1183, 1199 (9th Cir. 2021).

There is no evidence that law enforcement ever displayed a photograph of Defendant Hardin to Agonoy before the lineup, that they specifically identified a specific photograph in the lineup as Hardin, or that police officers arranged for Agonoy to view Hardin alone at any point prior to the lineup.[1]

Defendant asserts two bases for his Motion to Suppress:

First, Defendant alleges that unidentified Honolulu Police Officers told Agonoy that Treston Hardin's name was on paperwork found in the Nissan truck, that Hardin was on parole, and that Hardin had "charges."[2]  (Def.'s Motion at p. 4, ECF No. 84-3).

---

[1] Following the identification of Defendant Hardin in the Blind Sequential Lineup, the police officers showed Argonoy photographs.  They inquired if he recognized the weapon found in the car near his recovered truck.  Argonoy identified the weapon in the photographs as the shotgun used during the carjacking. The bus pass found in the car was then showed to Argonoy. Argonoy identified the picture on the bus pass of Defendant Hardin as the person who had pointed the weapon at him. (Blind Sequential Lineup Identification completed at 10:52 a.m. on March 17, 2020, attached as Ex. K, ECF No. 84-15; Victim's identification of Defendant from photograph of bus pass recovered from Toyota Corolla, completed at 11:08 a.m. on March 17, 2020, attached as Defendant's Ex. L at p. 3, ECF No. 84-16).

[2] Defendant's counsel asserts in the Motion that the Government did not provide evidence disclosing that there was parole paperwork bearing Treston Hardin's name in initial discovery.  The record reflects that the police report of Detective Ming Wang, who conducted a search of the truck after it was recovered, states in his report that Technician B. Farley recovered evidence located within the vehicle including "Paperwork belonging to Treston Hardin." (Police Incident Report of Detective Wang, attached as Government's Ex. C at p. 3, ECF 83-6).  The Police Report of Detective Wang was provided to counsel in initial discovery.  (Transcript of Preliminary Hearing

Second, Defendant Hardin asserts that Agonoy told the investigator from the Federal Defender's Office that after learning the name "Treston Hardin," he conducted a search of social media on his own accord, found a profile for the Defendant on Facebook, and "saw several photos of a young guy from Waialua with long hair and visible tattoos." (Def.'s Motion at p. 4, ECF No. 84-3).

There is no admissible evidence to support Defendant Hardin's conjecture. Defendant's claims are based on hearsay of statements that Agonoy allegedly made to an investigator from the Office of the Federal Public Defender.

There is no affidavit or statement from Agonoy to support Defendant's claims.

There is also no affidavit or declaration from the investigator in the record.[3]

_____

at p. 22:12-14, attached as Ex. A to the Reply, ECF No. 91-2). Defense counsel was able to view photographs of the specific paperwork recovered from the truck. The photographs clearly show a letter addressed to Defendant Hardin from the State of Hawaii Paroling Authority. (Photographs of mail, letters, and paperwork seized from the Nissan truck bearing the name "Treston Hardin," attached as Government's Ex. D, ECF No. 86-4).

[3] Defendant's counsel states that, "the defense submitted a declaration in support of its Motion, attesting to the fact that defense investigator Christopher Graham-Egbo interviewed Wiltern Agonoy." (Reply at p. 5, ECF No. 91). There is no declaration from Christopher Graham-Egbo anywhere in the record. There is no declaration from the investigator attached to the First Motion to Suppress, the Second Motion to Suppress, or to the Reply. The only Declaration provided is from Defense counsel herself stating, as follows: "The facts described in the attached motion

16

There is no evidence from any police officers that they informed the victim that Defendant Hardin was on parole or had charges.  There is no evidence from any police officers that they informed Agonoy of Defendant Hardin's name.

Even if there was evidence to support Defendant Hardin's speculation that Hardin's name was disclosed to the victim, the out-of-court identification by Agonoy did not violate Defendant Hardin's due process rights.  There is no evidence to support a finding that officers engaged in misconduct that would warrant suppression of the out-of-court identification.

The allegations provided by Defendant Hardin do not assert that police officers instructed Agonoy to search for a picture of Hardin, to search social media, or to search Facebook for a profile with Defendant Hardin's picture.  There is no evidence that any police officers were aware that Defendant Hardin had a Facebook profile with his picture displayed publicly.  There is no evidence of the photograph(s) allegedly viewed by Agonoy on Facebook and whether any photograph resembled the photograph of Defendant Hardin used in the lineup.

There is no evidence of police involvement that would trigger a due process inquiry.  Rather, the allegations by

---

are true and correct to the best of my knowledge, information and belief."  (Declaration attached to 2d Motion to Suppress, ECF No. 84-4).  Defense counsel cannot provide testimony and cannot attest to what a witness allegedly told her investigator.

Defendant Hardin provide that Agonoy looked up Hardin's profile on social media on his own volition without police direction. There is no due process violation without a showing of police misconduct.  The Due Process Clause does not require the exclusion of the evidence unless the suggestive nature of an identification process is the direct result of law enforcement misconduct.  Vines, 9 F.4th at 507-08.

A victim seeking out information about the defendant on his own does not amount to a due process violation.  Id.  There can be no due process violation absent improper police arrangement, improper police conduct, or rigging.  Perry, 565 U.S. at 241.

In Schroeder v. Premo, 714 Fed. Appx. 666, 669 (9th Cir. 2019), the Ninth Circuit Court of Appeals held that the Due Process Clause was not violated when the witness read a newspaper article that included a photograph of the defendant and saw a news clip about the defendant's case prior to identifying him in the photo lineup.  The appellate court explained that "only police-created impermissibly suggestive circumstances implicate due process concerns."  Id.

Similarly, in United States v. Seary-Colon, 997 F.3d 1, 10 (1st Cir. 2021), the First Circuit Court of Appeals held that there was no due process violation regarding an out-of-court identification where the defendant's picture had been featured on the cover of the newspaper prior to the victim's identification

18

of the defendant in the photo lineup.

In <u>United States v. Cloud</u>, 2020 WL 8410428, *2 (E.D. Wash. Oct. 14, 2020), the United States District Court for the Eastern District of Washington ruled that there was no Due Process violation when an eyewitness viewed a Facebook posting that contained a photo of the defendant prior to identifying him.  The witness was previously shown a police line-up and could not identify the defendant but after viewing the Facebook photo stated that he was certain that the defendant was the man he could not previously identify.  <u>Id.</u>

The District Court in <u>Cloud</u> denied the defendant's motion to suppress the eyewitness identification.  The District Court ruled there was no police misconduct to trigger a due process violation.  <u>Id.</u> at *5-*8.  The police did not arrange for the witness to view the Facebook post and did not engage in any misconduct by failing to inform the witness to stay away from social media during the investigation.  <u>Id.</u> at *5-*8.

Just as here, there is no evidence that law enforcement arranged for Agonoy to view any photos of Defendant Hardin, on social media or otherwise, prior to the Blind Sequential Photographic Lineup.  A victim's use of social media on their own to identify a suspect or to inform law enforcement as to the suspect's identity does not violate the Due Process Clause. <u>United States v. Collymore</u>, 2017 WL 5197287, *2 (S.D.N.Y. Oct.

19

20, 2017) (finding the defendant was not entitled to a suppression hearing where the victim looked up the defendant on Facebook and presented his photo to police).

Defendant Hardin has not established that law enforcement engaged in an unduly suggestive procedure that amounts to police misconduct.

### B.   Law Enforcement Must Have Engaged In Misconduct And Used An Identification Procedure That Was Unnecessary

The identification procedure used by law enforcement must have been both unduly suggestive and unnecessary in order for evidence to be suppressable. Perry, 565 U.S. at 241; United States v. Sanders, 708 F.3d 976, 983-84 (7th Cir. 2013).

A procedure that is suggestive may still be necessary for an investigation. Perry, 565 U.S. at 241. In Simmons v. United States, 390 U.S. 377, 384-85 (1968), the United States Supreme Court explained that suggestive identification procedures may be justified when necessary.

In Simmons, the defendant committed an armed robbery of a bank with an accomplice. Id. at 379-80. The next morning police obtained a few photographs that depicted the defendant with the man suspected of being his accomplice and showed the photographs to the bank employees who identified the defendant as one of the robbers. Id. at 380. The defendant argued that the procedure violated his due process rights, but the United States Supreme

Court disagreed, stating:

> A serious felony had been committed.  The perpetrators
> were still at large.  The inconclusive clues which law
> enforcement officials possessed led to ... Simmons.  It
> was essential for the FBI agents swiftly to determine
> whether they were on the right track, so that they
> could properly deploy their forces ... and, if
> necessary alert officials in other cities.

Id. at 384-85.

Defendant Hardin argues that police engaged in unnecessarily
suggestive procedures by disclosing the name Treston Hardin to
Agonoy while searching the recovered truck.  While there is no
evidence supporting Defendant's theory, even if there were,
Defendant Hardin has not established that the disclosure of his
name was unnecessary.

The evidence in the record demonstrates that numerous pieces
of mail were recovered from the truck bearing the name "Treston
Hardin" on them.  (Photographs of mail, letters, and paperwork
seized from the Nissan truck bearing the name "Treston Hardin,"
attached as Government's Ex. D, ECF No. 86-4).  Just as in
Simmons, it was necessary for law enforcement "swiftly to
determine whether they were on the right track" and to determine
whether there was a basis for the mail to be in the truck.
Simmons, 390 U.S. at 384-85.  Law enforcement needed to inquire
with Agonoy if the mail belonged to him or someone he knew or
whether it may be relevant for the investigation into the
carjacking.  Id.  Defendant has to show more than speculation

that police officers did not conform to the ideal best practices in order to provide a basis to suppress the out-of-court identification.  Simmons, 390 U.S. at 385-86.

Numerous courts have found that disclosing the name of the suspect to the witness is not enough to demonstrate an unnecessarily suggestive police identification procedure.  United States v. Murphy, 2018 WL 6503502, *7-*8 (E.D. Tenn. Dec. 11, 2018); State v. Davis, 507 S.W.2d 32, 34 (Mo. App. 1974).

In Murphy, the District Court rejected the defendant's claim that the police officer's disclosure of the suspect's name to the eyewitness victim resulted in a Due Process violation.

In Murphy, the victim was unable to identify the defendant in a police lineup following his kidnapping.  After the victim failed to identify the suspect, the police informed the victim of the name of the defendant and that the fingerprints of the defendant were found on his car.  The victim went home and Googled the defendant's name under his own volition and saw the defendant's mugshot online.  The victim immediately recognized the defendant as the suspect that kidnapped him and informed the police.

In Murphy, the defendant moved to suppress the identification and argued that the police engaged in misconduct by disclosing the defendant's name as a suspect whose fingerprints they had lifted from the victim's car.  Id. at *2-

22

*3.  The District Court found there was no unnecessarily suggestive police tactics.  The District Court explained that if defendant's arguments were adopted as a rule, any time the police uttered the suspect's name and/or mentioned their arrest in front of an eyewitness, it would ultimately result in the eyewitness's testimony being inadmissible unless found independently reliable, which is contrary to the law.  Id. at *8.  Rather, inquiry into whether the victim knows the person the police have identified is sometimes a necessary law enforcement tool.

Just as here, the alleged disclosure of the name "Treston Hardin" to Agonoy as being found on mail in the recovered Nissan truck was necessary.  There is no evidence that the police disclosed that this person was a suspect or being investigated by the police.  There was no direction from the police for the victim to conduct research about the person or search his name on the internet or social media.  The police officer's alleged disclosure of the name alone did not violate Defendant Hardin's Due Process rights.

The inquiry into the Due Process claim ends at Step One if the trial court finds a challenged procedure was not unduly suggestive and unnecessary.  Bagley, 772 F.2d at 482.  There is no need for the Court to assess the reliability of the identification under the totality of the circumstances.  Walden, 990 F.3d at 1201.

Here, the inquiry ends because Defendant Hardin has failed to demonstrate that law enforcement engaged in misconduct and used procedures that were both unduly suggestive and unnecessary. The defendant is not entitled to a hearing.  Allison, 414 F.2d at 410; United States v. Salomon-Mendez, 992 F.Supp.2d 340, 343 (S.D.N.Y. Jan. 20, 2014).

The reliability of Agonoy's out-of-court identification of Defendant Hardin and possible in court identification of Defendant Hardin is a matter for the jury.  United States v. Bruce, 984 F.3d 884, 892 (9th Cir. 2021); United States v. Thomas, 849 F.3d 906, 911 (10th Cir. 2017).

**CONCLUSION**

Defendant Treston Hardin's Motion to Suppress (ECF No. 84) is **DENIED.**

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 22, 2021.

Helen Gillmor
United States District Judge

United States of America v. Treston Hardin (01), Crim. No. 20-00046 HG-01; **ORDER DENYING DEFENDANT TRESTON C. HARDIN'S MOTION TO SUPPRESS OUT-OF-COURT IDENTIFICATIONS OF TRESTON C. HARDIN AND DENYING HIS REQUEST TO PRECLUDE IN-COURT IDENTIFICATION (ECF No. 84)**

24